```
UNITED STATES DISTRICT COURT                FOR ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X
JOYCE COLLIER,                              :
                                            :
                        Plaintiff,          :      MEMORANDUM
                                            :      AND ORDER
        - against -                         :
                                            :      05 CV 2191 (JG)
PLUMBERS UNION LOCAL NO. 1 of the           :
UNITED ASSOCIATION OF JOURNEYMEN            :
AND APPRENTICES OF THE PLUMBING AND         :
FITTING INDUSTRY OF THE UNITED STATES       :
AND CANADA, GEORGE REILEY, in his           :
individual and official capacity, and DONALD :
DOHERETY, in his individual and official    :
capacity,                                   :
                                            :
                        Defendants.         :
----------------------------------------------------------------- X
```

A P P E A R A N C E S :

    LAW OFFICES OF FREDERICK K. BREWINGTON
        50 Clinton Street, Suite 501
        Hempstead, NY 11550
    By:    Frederick K. Brewington
        Attorneys for Plaintiff

    PITTA & DREIER LLP
        499 Park Avenue
        New York, NY 10022
    By:    Jane L. Barker
        Attorneys for Defendants

JOHN GLEESON, United States District Judge:

        Joyce Collier, a female African-American journey-level plumber, brings this antidiscrimination action against Plumbers Union Local No. 1 of the United Association of Journeymen and Apprentices of the Plumbing and Fitting Industry of the United States and Canada ("Local No. 1"), her labor organization; George Reilly, Business Manager of Local No.

1; and Donald Doherty, Business-Agent-at-Large of Local No. 1.[1] Collier claims that defendants withheld jobs from her and referred her to fewer and less-skilled work assignments than they referred white male union members to, because of her race, color and gender and in retaliation for engaging in statutorily protected activity. Collier contends that this conduct violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; the New York State Human Rights Law; and 42 U.S.C. § 1981.[2] Defendants move for summary judgment pursuant to Fed. R. Civ. P. 56. As explained below, the motion is granted.

BACKGROUND[3]

In September 1999, Collier graduated from her apprenticeship to become a Class A journey-level plumber. She was working upon her graduation, but soon left that job. After her departure, the cause of which the parties dispute, Collier obtained a number of short-term jobs through January 2006. She received temporary heat work -- installing and operating temporary systems to heat construction projects in winter -- through assignments by Local No. 1 business agents at least seven times. Collier also obtained several other types of short-term jobs from 2000 to 2006. Nevertheless, she worked well below the union average of 1,680 hours each year: the parties seem to agree that she reported working fewer than 1,000 hours yearly every year from 2001 to 2005. The question presented by this litigation is whether discrimination on the part of defendants caused that hourly shortfall.

---

[1] The individual defendants' names are spelled differently in the caption. The parties seem to agree that <Reilly> and <Doherty> are the correct spellings.

[2] Collier voluntarily withdraws her claim pursuant to the Equal Pay Act. *See* Plaintiff['s] Memorandum of Law in Opposition to Defendants['] Motion for Summary Judgment 22.

[3] Unless otherwise stated, the facts set forth are not in dispute.

Pursuant to Local No. 1's collective bargaining agreement, business agents assign temporary heating work to journey-level union members. The work commands full wages and benefits, but, according to Collier, it is considered substandard, relatively menial labor. *See* Collier Decl. ¶¶ 28-29. Whether Local No. 1 also assigns or refers other types of jobs is a point of dispute. Collier asserts that Local No. 1 business agents regularly "hire and refer" union members to jobs other than temporary heating jobs. *Id.* ¶ 30. I take the claim to be true for the purposes of this motion. The parties do appear to agree that (1) self-solicitation (including so-called "shaping" a job, which entails visiting a job site to inquire whether positions are available) is a primary way union members obtain jobs, and (2) the union assists its members in obtaining non-temporary-heat jobs to at least some extent. For example, Collier obtained a non-temporary-heat job in April 2002 by "shaping" it after reviewing a listing of available jobs (so-called "green card" lists) posted in the union's office. Collier also got at least some non-temporary-heat work through union business agents. In September 2000, for example, she received a job installing sewer lines with F&G Mechanical Corp. Collier also received jobs with Reliable Fire Protection, Inc. and Kagan Custom Kitchens through business agents, but her testimony implied this work was relatively menial. *See* Collier Dep. 138, 144.

On February 26, 2004, Collier filed a charge with the Equal Employment Opportunity Commission ("EEOC") against Local No. 1.[4] Having received a right to sue letter from the EEOC, Collier commenced this action on July 11, 2005.

DISCUSSION

---

[4] Collier briefly argues that this filing and subsequent protected activity triggered retaliatory adverse employment actions by the defendants. Collier mentions no specific actions taken by defendants following the filing of the complaint, however. *See* Pl. Br. 22-23. I therefore dismiss the retaliation claim for lack of evidence.

Defendants move for summary judgment on Collier's discrimination claims, arguing that Collier has not established a prima facie case of discrimination by Local No. 1.[5] Collier argues that the record contains sufficient evidence to support a jury's conclusion that (1) Local No. 1 withheld work assignments from female and African-American union members who sought the work, including Collier; and (2) Local No. 1 referred more and better-quality assignments to white male union members than to female and African-American union members, including Collier. Collier seeks to recover under theories of disparate treatment and disparate impact. I conclude that she has failed to establish a prima facie case against Local. No. 1 under either theory.[6]

A. *Standard of Review on Summary Judgment*

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party must demonstrate that no

---

[5] Defendants also move for summary judgment on Collier's section 1981 claims. This is granted, because the parties agree defendants were not contractually bound to refer or assign Collier to any of the non-temporary-heat jobs she claims she was denied. On the undisputed facts, therefore, Collier suffered no predicate deprivation of her "right . . . to make and enforce contracts." 42 U.S.C. § 1981. As the text of the statute indicates, a section 1981 claim requires evidence of "an impaired contractual relationship under which the plaintiff has rights." *Domino's Pizza, Inc. v. McDonald*, 126 S. Ct. 1246, 1249 (2006) (internal quotation marks and citation omitted). Collier cannot recover for harm to her expectation interest in defendants' referral and assignment practices, because that interest is not contractual.

[6] This conclusion disposes of Collier's remaining claims. First, it requires that Collier's claims against the individual defendants be dismissed, because the only evidence Collier cites linking those defendants to the union's claimed wrongdoing is her declaration that they participated, as the supervisors of union business agents, in the union's disparate referrals. *See* Collier Decl. ¶ 19. At oral argument, counsel also conceded that the individual defendants' Title VII liability was precluded under Second Circuit law. *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995), *abrogated on other grounds by Burlington Indus. v. Ellerth*, 524 U.S. 742 (1998); *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000). Second, my conclusion that Collier has not met the burden of production required by Title VII entails that she has also failed to establish a prima facie case under the New York State Human Rights Law. *See Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 715 (2d Cir. 1996).

4

genuine issue exists as to any material fact. *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir. 1994). For summary judgment purposes, a fact is "material" when its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Accordingly, the test for whether an issue is genuine requires "the inferences to be drawn from the underlying facts [to] be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation marks and citation omitted).

Once the moving party has met her burden of production, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587 (quoting Fed. R. Civ. P. 56(e)) (emphasis omitted). Critically,

> the moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case. When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper.

*Gallo*, 22 F.3d at 1223-24 (citations omitted). The nonmoving party cannot survive summary judgment by casting mere "metaphysical doubt" upon the evidence produced by the moving party. *Matsushita*, 475 U.S. at 586.

B.  *Disparate Treatment*

Local No. 1 argues that Collier has not established a prima facie case of disparate treatment because the record contains insufficient evidence to support a reasonable inference of discriminatory motive. I agree. A prima facie case of intentional discrimination requires the

5

plaintiff to produce evidence that, *inter alia*, the complained-of "adverse employment action occurred under circumstances giving rise to an inference of discrimination on the basis of plaintiff's membership in [a protected] class." *See Farias v. Instructional Sys., Inc.*, 259 F.3d 91, 98 (2d Cir. 2001). Collier is correct that adverse actions against a qualified plaintiff in favor of equally qualified members not in the plaintiff's protected class can give rise to an inference of discrimination. *See Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir. 1996). More specifically, she is correct that the repeated recommendation of white males to more and choicer assignments than a qualified protected plaintiff can support the required inference. *See Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 205 (2d Cir. 1995). But Collier has not adduced evidence to support her claim that such disparate treatment occurred in her case. Though both sides agree Collier received relatively few jobs compared to the union average, and was "[o]ften times" referred to sub-par temporary heating jobs, Collier Decl. ¶ 31, Collier's evidence about the union's corresponding treatment of white male union members, even taken in the light most favorable to Collier, does not suffice to support an inference of discriminatory motive.

Arguing that the union withheld work assignments from her in favor of white males, Collier cites to her amended complaint, her declaration, and a response to an interrogatory for the proposition that she "shaped" a number of jobs "but was mysteriously turned down for [them], and [then] later noticed that a number of said jobs were filled by a Caucasian and/or male plumber." Pl. Br. 8. But the cited materials nowhere reflect that the listed jobs later hired Caucasians or males. (Moreover, a summary judgment motion does not turn on statements in a plaintiff's complaint. *See* Fed. R. Civ. P. 56(e).) Collier's claim that she "fail[ed] to see any African-American and/or female plumbers at these sites," Pl. Br. 8, likewise, is supported by no

6

citation to the record. Indeed, some of the evidence in the record contradicts the claim. *See* Collier Dep. 101-02 (testifying that two black women were working on one job shaped by plaintiff).

With respect to the union's alleged disparate referrals, Collier claims that Local No. 1 referred white males "to more hours of work and more sophisticated jobs/assignments that involved performing underground work such as installing or fixing sewer pipes, water lines, waste lines, vent lines, and stacks." Pl. Br. 6. But she offers insufficient evidence of such disparity in the number or quality of referrals. Instead, Collier cites to twenty-eight consecutive paragraphs in her declaration, which -- to the extent they are at all relevant to the claim -- contain descriptions of the paucity of work Collier received and accusations of discrimination as the cause. *See* Collier Decl. ¶¶ 39-47. They do not supply evidence of the union's treatment of members who were not female or black. Similarly, Collier's testimony that she shaped work assignments that were later denied to her, *see* Collier Dep. 99-103; Plaintiff's Response to Defendants' First Set of Interrogatories No. 8, does not establish the comparable quality or quantity of work received on the union's reference by white male union members.

Collier's testimony that certain (presumably white) male plumbers told her that they called a union business agent to obtain work, *see* Collier Dep. 104, is not admissible evidence that could reasonably support an inference of a discriminatory motive. For one thing, the testimony is hearsay, *i.e.*, out of court statements offered for the proposition that white male union members obtained work through union business agents. If Collier sought to testify to those statements at trial, a hearsay objection would be sustained. Collier's counsel admitted as much at oral argument. Even were the statements admissible, at most they would tend to prove

that Local No. 1 business agents refer white males to at least some work assignments. The statements do not, without more, provide circumstantial evidence that business agents referred more work assignments or more non-temporary-heat jobs to white males than they did to Collier, because the parties agree Collier herself was referred to at least some non-temporary-heat jobs. *See* Collier Dep. 135-36 (various kitchen fire control installation assignments with Reliable Fire Protection, Inc. solicited by union business agent); *id.* at 142-43 (installation of sewer line assignment with F&G Mechanical Corp. solicited by union business agent); *see also* Collier's Rule 56.1 Response ¶¶ 41-42. Similarly, Collier's assertion that "[o]ften times" the referral of union business agents "would go to these agent[s'] friends, or family members[,] most of whom are white men," even if admissible, simply does not establish disparate treatment. Collier Decl. ¶ 24.

C.   *Disparate Impact*

Local No. 1 argues Collier has not established a prima facie case of discrimination under a disparate impact analysis. I agree. "To make out a prima facie case of disparate impact, a plaintiff must '(1) identify a policy or practice, (2) demonstrate that a disparity exists, and (3) establish a causal relationship between the two.'" *Malave v. Potter*, 320 F.3d 321, 325 (2d Cir. 2003) (quoting *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 160 (2d Cir. 2001)). Plaintiff points to two pieces of evidence to prove the existence of a disparity between black female Local No. 1 members and other members. Both are insufficient as a matter of law.

First, plaintiff declares that "[s]ince approximately 1989-2004, out of approximately 5,000 members, there were 56 women in the union, which is slightly over 1% of

8

the membership." Collier Decl. ¶ 17. This statement is evidence of a gender disparity in union membership. But Collier's complaint is not about the disparity in union membership. Rather, it is about disparity in referrals and withholding of work. The gender disparity in the union population provides no support for the existence of a disparate impact in those activities.

Second, Collier provides a list of hours worked yearly over a five-year period for thirteen female union members. *See id.* ¶ 56. Most of the women appear to have worked under 1,000 hours a year, which the parties agree is well under the standard full-year number of 1,680. *See* Reilly Aff. ¶ 19; Collier's Rule 56.1 Response ¶ 21. But despite claiming a "higher percentage of female union members who struggle with lesser [*sic*] hours and more menial assignments," Pl. Br. 19 (emphasis omitted), Collier presents no corresponding evidence of the hours worked by men.[7] There is therefore insufficient evidence of a disparity of impact upon women.

Furthermore, the record lacks admissible evidence linking the disparity of impact to a union policy or practice. Plaintiff cites a "news article," the provenance of which goes unmentioned, in which a "union activist," Pl. Br. 16, claims, *inter alia*, that the union's "business agents and the contractors agree among themselves to hire certain men for plumbing jobs" and "ignore requests [by women] for full-time work." Brewington Decl. Ex. F. This unsworn statement is inadmissible hearsay. Plaintiff also cites her amended complaint, *see* Pl. Br. 16, which, as I explained earlier, is not a document a plaintiff may rely upon to fend off a motion for

---

[7] Plaintiff acknowledges that "the relevant inquiry" includes the question "out of a pool of the male members of defendant Local 1, what percentage of its male plumber members are under-employed, working menial jobs, and involved in less than [*sic*] 1000 hours of work?" Pl. Br. 19. Plaintiff takes defendants to task for not answering the question, *see id.*, but the prima facie case is not defendants' to make.

summary judgment. In sum, plaintiff points to no sufficient disparate impact evidence from which a reasonable jury could infer the existence of discrimination.

CONCLUSION

Defendants' motion for summary judgment is granted. The Clerk is respectfully directed to enter judgment for defendants and close the case.

So ordered.

John Gleeson, U.S.D.J.

Dated: Brooklyn, New York
   June 7, 2007